IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

GLENDA S. SIMMONS, as Guardian     )
and Conservator of Bryan           )
O'Neil Simmons, CALVIN C.          )
SIMMONS, as Guardian and           )
Conservator of Bryan O'Neil        )
Simmons, BRYAN O'NEIL SIMMONS,     )
and TIFFANY SIMMONS,               )
                                   )
            Plaintiffs,            )
                                   )
        v.                         )       1:14cv730
                                   )
CORIZON HEALTH, INC., CORIZON,     )
LLC, B.J. BARNES, in his           )
official capacity as Sheriff       )
of Guilford County, North          )
Carolina, GUILFORD COUNTY, and     )
THE LOCAL GOVERNMENT EXCESS        )
LIABILITY FUND, INC.,              )
                                   )
            Defendants.            )

## MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, District Judge.

Plaintiffs Glenda, Calvin, Bryan, and Tiffany Simmons bring suit against Defendants Corizon Health, Inc., Corizon, LLC (collectively "Corizon"); B.J. Barnes, Sheriff of Guilford County, Guilford County (the "County"), and the Local Government Excess Liability Fund, Inc. ("LGELF") (collectively "Guilford Defendants"), for alleged violations of Bryan Simmons' constitutional rights pursuant to 42 U.S.C. § 1983, as well as for violations of North Carolina law. Before the court are two motions: (1) all Defendants move to dismiss several of Plaintiffs'

claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure; and (2) the Guilford Defendants also move to dismiss several claims pursuant to Federal Rule of Civil Procedure 12(b)(2). For the reasons set forth below, the motions will be granted in part and denied in part.

## I.  BACKGROUND

The allegations of the amended complaint, viewed in the light most favorable to Plaintiffs, as nonmoving parties, are as follows:

The County contracted with Corizon to provide medical care to inmates housed in the County jail. (Doc. 20 ¶ 100.) Under the contract, Corizon was to provide "24 hour emergency medical care, 7 days a week to all inmates," "meet or exceed the written directives of the Guilford County Health Services Director," and "meet or exceed" the standards of the National Commission on Correctional Health Care ("NCCHC"). (Id. ¶¶ 101–03.) Plaintiffs allege that Corizon violated multiple provisions of the contract and the NCCHC standards. (Id. ¶¶ 104–10.) They further allege that, under the contract, Corizon was obligated to pay for the cost of any hospital care inmates received. (Id. ¶ 68.)

On September 4, 2012, Bryan Simmons (hereafter "Bryan") was incarcerated in the County jail on a probation violation with a release date of December 3, 2012. (Id. ¶ 2.) In November, however, he began complaining about severe stomach pain, constipation, a distended stomach, and vomiting blood. (Id. ¶ 4.) Bryan made

2

both the jailers and Corizon's medical staff aware of his medical complaints, and his bloody vomit was readily apparent to "the Defendants." (Id. ¶ 43.) On November 22, 2012, Corizon nurses took a sample of Bryan's blood, sent it to a laboratory for testing, and administrated certain laxatives. (Id. ¶ 48.) The results were received on or before November 24, 2012, and showed indications of intestinal bleeding and renal failure, but they were not reviewed by Corizon's jail physician until December 4, 2012. (Id. ¶¶ 49-51, 105.)

Bryan's condition worsened after November 22. On November 24, he was found unconscious on the floor of his cell with blood on his clothing and the floor. (Id. ¶ 54.) Sometime around this occurrence, he requested to be seen at a hospital, but Corizon staff denied his request. (Id. ¶ 55.) On November 30, his medical records document that he complained of sharp abdominal pain and shortness of breath. (Id. ¶ 57.) At some point, the medical records also documented "the vomiting of blood, decreased urine output and no bowel movements for two weeks." (Id. ¶ 56.) Bryan received some medication following his complaints, but who provided it is not disclosed. (Id. ¶ 57.)

On December 1, an inmate called Bryan's parents on his behalf because he was too sick to come to the phone. (Id. ¶ 58.) The inmate told his parents that he had collapsed on the floor the night before and urinated on himself. (Id.) Later that day, Bryan

3

was transferred to a "suicide watch" cell after a Corizon nurse and a jailer reported his having a bloody rag in his mouth and trying to "kill himself due to the pain he was experiencing." (Id. ¶ 63.) That night (December 1), Corizon nurses observed Bryan with bloody vomit on his face but told him that no hospitalization was required. (Id. ¶ 64.) At some point around that time, he was placed in a wheelchair by an unspecified person because he "was unable to stand or walk without assistance." (Id. ¶ 67.)

Throughout the night of December 1 and the early morning of December 2, Bryan told County detention officers he was experiencing great stomach pain. (Id. ¶¶ 75–77.) At one point in the early morning hours, he told a County detention officer of the pain in his stomach and groin and said he believed he was "bleeding on the inside." (Id. ¶ 69.) At approximately 1:59 a.m. on December 2, a Corizon nurse checked on him. (Id. ¶ 78.) Bryan told the nurse, "I'm bleeding on the inside . . . I can feel it churning." (Id.) The Corizon nurse informed him that the doctor had been told about him but that only a doctor could send him to the hospital. (Id. ¶ 80.) Bryan continued to tell the nurse he was "bleeding on the inside" and said that he had been throwing up blood for days. (Id. ¶¶ 81–82.) When asked by the Corizon nurse how many days he had been vomiting blood, Bryan responded, "About four." (Id. ¶ 82.) The Corizon nurse told Bryan either "Survive that thing now" or "Survive the day now," followed by, "You'll be

4

alright." (Id.) During the same visit, and with blood covering the floor of Bryan's cell, the Corizon nurse purportedly observed, "[T]his is not fresh blood," and went on to add, "Old blood . . . probably from the gastric." (Id. ¶ 85; see also id. ¶ 78 (alleging that deputies cleaned the cell floor of vomited blood while the Corizon nurse was in Bryan's cell).) The Corizon nurse concluded, "[U]lcer probably." (Id. ¶ 85.) Bryan received no further medical care and was not provided a physician consultation. (Id. ¶ 86.)

On the afternoon of December 2, Bryan again collapsed while being escorted to a cell in the medical ward. (Id. ¶ 89.) Shortly thereafter, he went into cardiac arrest caused by excessive internal bleeding from a perforated ulcer. (Id. ¶ 91.) According to Plaintiffs, no one at the prison administered oxygen, as was required "under the arrangement with the County's Health Director," and thirty-four minutes elapsed between Bryan's collapse and the time "medical personnel" administered oxygen. (Id. ¶ 94.) Unspecified persons, however, did "eventually" perform CPR on him. (Id. ¶ 97.) But "[d]ue to the lack of oxygen to his brain, [Bryan] suffered a catastrophic hypoxic brain injury." (Id.) Sadly, he remains "in a permanent vegetative state." (Id. ¶ 99.)

Plaintiffs allege that Corizon had a policy or custom "to outright deny medical treatment or be deliberately indifferent to the serious medical needs of" inmates at the County jail. (Id.

5

¶ 135.) They allege that this policy caused Bryan's current medical conditions. (Id. ¶¶ 106, 136.)

On August 26, 2014, Plaintiffs filed a complaint in this court, naming the current Defendants plus the Guilford County Sheriff's Office. (Doc. 2.) On November 4, 2014, Plaintiffs voluntarily dismissed the Sheriff's Office. (Doc. 19.) The next day, Plaintiffs filed an amended complaint, which raises six causes of action: (1) a claim under 42 U.S.C. § 1983 against the County and Sheriff B.J. Barnes in his official capacity; (2) a § 1983 claim against Corizon; (3) a State law negligence claim against all Defendants; (4) a State law negligence per se claim against Corizon; (5) a State law loss of consortium claim against all Defendants; and (6) a "claim" for punitive damages against Corizon. (Doc. 20.)

Corizon now moves to dismiss the amended complaint for failure to state a claim (Doc. 25), and the Guilford Defendants also move to dismiss for lack of personal jurisdiction and for failure to state a claim (Doc. 28). Both motions have been fully briefed and are ready for consideration.

## II. ANALYSIS

### A. Standard of Review Under Rule 12(b)(6)

Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. Under Federal

6

Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)). Conclusory pleadings are "not entitled to the assumption of truth," id. at 679, and mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" id. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). A Rule 12(b)(6) motion to dismiss "challenges the legal sufficiency of a complaint considered with the assumption that the facts alleged are true." Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009) (internal citations omitted).

**B. Corizon's Motion to Dismiss**

**1. Negligence Per Se Claim Against Corizon**

Corizon first contends that Plaintiffs' negligence per se claim fails because it is not predicated on the violation of a statute or ordinance. Plaintiffs counter that their claim is premised on allegations of both contractual and statutory violations, specifically Corizon's contractual duty to follow certain healthcare standards and two statutory provisions — N.C.

7

Gen. Stat. §§ 153A-224(b) and 153A-225. (Doc. 27 at 9–11.) Plaintiffs' allegations, however, are insufficient to state a claim for negligence per se against Corizon.

Plaintiffs allege that Corizon's contract with the County obligated Corizon to comply with the standards set by the NCCHC. (Doc. 20 ¶¶ 44, 145.) According to Plaintiffs, NCCHC's standards were created "for the safety and welfare of inmates such as Bryan Simmons" and "for purposes of ensuring that inmates received adequate medical care during their incarceration." (Id. ¶ 146.) The amended complaint lists several ways in which Corizon violated the NCCHC standards. (Id. ¶ 151.)

Plaintiffs, however, fail to provide support for the proposition that an alleged violation of a contractual obligation can support a claim of negligence per se. See Richardson v. United States, No. 5:08-CV-620-D, 2011 WL 2133652, at *4 (E.D.N.C. May 26, 2011) ("To prove negligence per se under North Carolina law, a plaintiff must show that the defendant violated a public-safety statute or regulation."). Thus, Corizon's alleged violation of its contract with the County fails to state a claim of negligence per se under North Carolina law. Cf. Correll v. Bank of Am., N.A., No. 2:11CV477, 2012 WL 348594, at *5 (E.D. Va. Feb. 2, 2012) (holding, under Virginia law, that contractual obligation was "non-actionable" to support a negligence per se claim).

8

The North Carolina laws cited by Plaintiffs — N.C. Gen. Stat.
§§ 153A-224(b) and 153A-225 — also fail to serve as a basis for
negligence per se.[1] First, § 153A-224(b) states in relevant part:
"In a medical emergency, the custodial personnel shall secure
emergency medical care from a licensed physician according to the
unit's plan for medical care. If a physician designated in the
plan is not available, the personnel shall secure medical services
from any licensed physician who is available." Plaintiffs offer
no explanation why this provision, which applies to counties,
applies to Corizon. Cf. Univ. of N.C. v. Hill, 386 S.E.2d 755,
757 (N.C. Ct. App.) (observing that the statute "require[s] that
a county provide emergency medical services to prisoner's
incarcerated in the county's jail" (emphasis added)), aff'd, 396
S.E.2d 323 (N.C. 1990); see also Knight v. Vernon, 214 F.3d 544,
550 (4th Cir. 2000) (citing § 153A-224 for a jailer's general
duties "to supervise and care for inmates"). More specifically,
Plaintiffs make no allegation that Corizon employees served in a
custodial capacity. Their amended complaint actually makes
allegations to the contrary: "[T]he nursing staff of Corizon . . .
provided health services to the jail." (Doc. 20 ¶ 10; see also

---

[1] The parties have not addressed whether these two statutes qualify as
public safety statutes upon which a negligence per se claim can be
predicated. Under North Carolina law, a public safety statute "is one
that imposes upon a defendant a specific duty for the protection of
others." Richardson, 2011 WL 2133652, at *4 (citing Stein v. Asheville
City Bd. Of Educ., 626 S.E.2d 263, 266 (N.C. 2006)).

9

id. ¶ 13 ("Corizon . . . had contracted with Guilford County to provide *medical treatment* to the jail inmates.").) Section 153A-224(b) therefore cannot be read to impose a statutory duty on Corizon.

The second cited statutory provision, § 153A-225, states: "Each unit that operates a local confinement facility shall develop a plan for providing medical care for prisoners in the facility." Under the statute's definitional section, the term "unit" refers only to "a county or city." N.C. Gen. Stat. § 153A-217. Thus, § 153A-225 imposes no duty on Corizon to "develop a plan for providing medical care for prisoners."

Corizon's motion to dismiss Plaintiffs' negligence per se claim will therefore be granted.

### 2. Section 1983 Claim Against Corizon

Plaintiffs bring a claim against Corizon under § 1983 and the Eighth Amendment. "[A] private corporation is liable under § 1983 *only* when an official policy or custom of the corporation causes the alleged deprivation of federal rights." Austin v. Paramount Parks, Inc., 195 F.3d 715, 728 (4th Cir. 1999). Corizon only argues that Plaintiffs' amended complaint fails to state a § 1983 claim for relief because it fails to sufficiently allege Corizon's deliberate indifference — not because it fails to allege an official policy or custom causing any alleged deprivation. (Doc. 26 at 5-9.)

10

The Eighth Amendment imposes a duty on municipal actors to "provide humane conditions of confinement." Makdessi v. Fields, 789 F.3d 126, 132 (4th Cir. 2015). In order to state a § 1983 claim under the Eighth Amendment for inadequate medical care when in confinement, a plaintiff must allege that municipal actors were deliberately indifferent to his serious medical needs. See Estelle v. Gamble, 429 U.S. 97, 104 (1976). "[T]here is a subjective and an objective component to showing a violation of the right. The plaintiff must demonstrate that the officers acted with 'deliberate indifference' (subjective) to the inmate's 'serious medical needs' (objective)." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (quoting Estelle, 429 U.S. at 104).

According to the Supreme Court, the deliberate indifference standard lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other" and equates to recklessness. Farmer v. Brennan, 511 U.S. 825, 835–36 (1994). Allegations that a municipal actor knew of and disregarded a substantial risk of harm are sufficient to state a claim for relief. See id. ("It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk."); Parrish ex rel. Lee v. Cleveland, 372 F.3d 294, 302 (4th Cir. 2004).

11

Plaintiffs' allegations state sufficient facts of deliberate indifference to avoid 12(b)(6) dismissal. According to Plaintiffs, Bryan made Corizon's medical staff aware of his serious medical complaints concerning "severe stomach pain" and "prolonged constipation" in late November 2012. (Doc. 20 ¶¶ 42-43.) Corizon nurses allegedly took Bryan's blood, sent it to a laboratory, and provided laxatives. (Id. ¶ 48.) At some point after Bryan had been vomiting blood and found unconscious on November 24, Plaintiffs allege that Corizon staff declined his request to be sent to the hospital. (Id. ¶¶ 54-55.) Plaintiffs further allege that "[m]edical records document the vomiting of blood, decreased urine output and no bowel movements for two weeks." (Id. ¶ 56.) On November 30, Bryan's medical records allegedly show that he continued to complain of sharp abdominal pain and shortness of breath. (Id. ¶ 57.)

The next day, a Corizon nurse is claimed to have reported that Simmons "had a bloody rag in his mouth and wanted to kill himself due to the pain he was experiencing." (Id. ¶ 63.) Later that same day, Corizon nurses allegedly observed him with bloody vomit on his face but told him that hospitalization was not required. (Id. ¶ 64.) During the night, Bryan vomited blood again. (Id. ¶ 77.) When a Corizon nurse responded to the incident, Bryan allegedly reported, "I'm bleeding on the inside . . . I can feel it churning." (Id. ¶ 78.) According to Plaintiffs, the nurse

12

told him they had "told the doctor about it" and that only a doctor could send him to the hospital. (<u>Id.</u> ¶ 80.) Bryan continued to tell the nurse he was "bleeding on the inside" and said that he'd been throwing up for days. (<u>Id.</u> ¶¶ 81–82.) When the Corizon nurse asked how many days, he responded, "About four." (<u>Id.</u> ¶ 82.) The Corizon nurse allegedly responded he should simply either "Survive that thing now" or "Survive the day now" followed by, "You'll be alright." (<u>Id.</u>) Finally, with blood covering the floor of Simmons' cell, the same Corizon nurse purportedly observed, "[T]his is not fresh blood," going on to say, "Old blood . . . probably from the gastric." (<u>Id.</u> ¶ 85.)

Despite Bryan's complaints and the nurse's observations, Bryan allegedly received no further medical care and was not provided a physician consultation. (<u>Id.</u> ¶ 86.) Shortly thereafter, he went into cardiac arrest caused by excessive internal bleeding from a perforated ulcer and remains in a vegetative state. (<u>Id.</u> ¶¶ 91, 99.)

Suffice it to say that these allegations, taken as true at this stage of the proceedings, state plausible deliberate indifference as to Bryan's serious medical needs.

### 3. Punitive Damages Claims Against Corizon

Corizon finally contends that Plaintiffs have failed to state a claim for punitive damages under State or federal law. (Doc. 27 at 9–10.) Corizon's only argument is that Plaintiffs cannot seek

13

punitive damages because they have failed to allege sufficient facts showing deliberate indifference.

First, Plaintiffs' amended complaint fails to specify the ground upon which its punitive damages request is based. (Doc. 20 ¶¶ 159–62.) Corizon argues that Plaintiffs' request fails under State and federal law. (Doc. 26 at 9–10.) In response, Plaintiffs argue that they have stated a claim for punitive damages because they have alleged facts showing that Corizon (1) refused to provide medical care when it knew or should have known it was required and (2) refused to provide necessary treatment after diagnosing Bryan with a perforated ulcer. (Doc. 27 at 18–20.)

Punitive damages are available under § 1983. See Smith v. Wade, 461 U.S. 30, 35 (1983). Such damages are only available, however, for conduct involving "reckless or callous indifference to the federally protected rights of others, as well as for conduct motivated by evil intent." Cooper v. Dyke, 814 F.2d 941, 948 (4th Cir. 1987) (quoting Smith, 461 U.S. at 56) (internal quotation marks omitted). "The callous indifference required for punitive damages is essentially the same as the deliberate indifference required for a finding of liability on [a] § 1983 claim." Id. Similarly, under North Carolina law, punitive damages are available where negligence is accompanied by "willful and wanton conduct." Benton v. Hillcrest Foods, Inc., 524 S.E.2d 53, 60 (N.C. Ct. App. 1999); see also Robinson v. Duszynski, 243 S.E.2d 148,

14

150 (N.C. Ct. App. 1978). "Wanton" conduct is that which is performed with a "wicked purpose or . . . done needlessly, manifesting a reckless indifference to the rights of others," while an act is "willful" where there is a "deliberate purpose not to discharge a duty, assumed by contract or imposed by law, necessary for the safety of the person or property of another." Benton, 524 S.E.2d at 60 (citations omitted.)

Insofar as the court has found Plaintiffs' allegations sufficient to allege deliberate indifference by Corizon, the court finds them sufficient to support a claim for punitive damages under § 1983. They also plainly allege conduct sufficient to state a claim under North Carolina law. Corizon's motion to dismiss predicated on Plaintiffs' claim for punitive damages will therefore be denied.

### C. Guilford Defendants' Motions to Dismiss

#### 1. Fourteenth Amendment Claims Under 42 U.S.C. § 1983

Guilford Defendants argue that the facts alleged do not state a Fourteenth Amendment claim against them under § 1983. Plaintiffs respond that their amended complaint dismissed their Fourteenth Amendment claims and that any remaining references to it are "scrivener errors." (Doc. 33 at 8.) Therefore, to the extent Plaintiffs' amended complaint could be construed as asserting Fourteenth Amendment claims, they will be dismissed.

## 2. Section 1983 Claim Against Guilford County

In order to state a § 1983 claim under the Eighth Amendment for inadequate medical care, a plaintiff must allege that a municipal actor was deliberately indifferent to his serious medical needs. See Estelle, 429 U.S. at 104. A municipality, however, may not be found liable under § 1983 "based on a theory of respondeat superior or simply for employing a tortfeasor." Hill v. Robeson Cnty., N.C., 733 F. Supp. 2d 676, 683 (E.D.N.C. 2010); see also Riddick v. Sch. Bd. of Portsmouth, 238 F.3d 518, 522 (4th Cir. 2000). Rather, to state a § 1983 cause of action against a municipality, a plaintiff must plead "(1) the existence of an official policy or custom; (2) that the policy or custom is fairly attributable to the municipality; and (3) that the policy or custom proximately caused the deprivation of a constitutional right." Pettiford v. City of Greensboro, 556 F. Supp. 2d 512, 530 (M.D.N.C. 2008) (citing Jordan by Jordan v. Jackson, 15 F.3d 333, 338 (4th Cir. 1994)); see also Carter v. Morris, 164 F.3d 215, 218 (4th Cir. 1999) (holding that a plaintiff must allege that a constitutional violation was caused by a municipality's "official policy or custom").

Guilford Defendants argue that Plaintiffs' § 1983 claim against the County should be dismissed because the amended complaint fails to allege "any independent acts by the County upon

16

which to hold it liable under § 1983."[2] (Doc. 29 at 9-13 (emphasis omitted).) They specifically dispute whether North Carolina law imposes a non-delegable duty on the County to provide adequate healthcare to inmates.[3] (Doc. 29 at 12; Doc. 33 at 9; Doc. 34 at 2-5.) The court need not resolve that issue, however, because the County has a non-delegable duty under the Eighth Amendment to provide adequate health care to inmates.

In Estelle, the Supreme Court held that government has an "obligation to provide medical care for those whom it is punishing by incarceration." 429 U.S. at 103. Later, in West v. Atkins, 487 U.S. 42 (1988), the Court made clear that "[c]ontracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody, and it does not deprive the State's prisoners of the means to vindicate their Eighth Amendment rights." Id. at 56. Courts of appeals both before and after West have held that the Eighth Amendment imposes a continuing obligation on government, including those at the county level, to provide adequate medical

---

[2] Guilford Defendants also argue that the County could not be liable for acts of the Sheriff or his officers. (Doc. 29 at 9-11; Doc. 34 at 2.) Plaintiffs deny making such a claim but say theirs is "based upon [the County's] own obligation to provide medical care to inmates." (Doc. 33 at 8.)

[3] The North Carolina Supreme Court has held that the North Carolina Constitution imposes a duty on the State to provide adequate medical care to inmates and "that the state cannot absolve itself of responsibility by delegating it to another." Medley v. N.C. Dep't of Correction, 412 S.E.2d 654, 659 (N.C. 1992).

care to inmates.

Before West, in circumstances identical to those here, the Eleventh Circuit held that, although a county had contracted out the performance of its Eighth Amendment obligation to provide medical care to inmates, the "county itself remains liable for any constitutional deprivations caused by the policies or customs of the [private medical services provider]." Ancata v. Prison Health Servs., Inc., 769 F.2d 700, 705 (11th Cir. 1985). After West, at least two other courts of appeals have held that the Eighth Amendment creates a continuing obligation on counties to provide adequate medical care despite contracting out inmate medical care to third parties. See Leach v. Shelby Cnty. Sheriff, 891 F.2d 1241, 1250 (6th Cir. 1989) (interpreting West to hold that a county "retains responsibility [for inmates' medical care] despite having contracted out the medical care of its prisoners"); King v. Kramer, 680 F.3d 1013, 1020 (7th Cir. 2012) (relying on Estelle to hold that "[t]he County cannot shield itself from § 1983 liability by contracting out its duty to provide medical services," noting that "[t]he underlying rationale is not based on respondent [sic] superior, but rather on the fact that the private company's policy becomes that of the County if the County delegates final decision-making authority to it"); see also Nieto v. Kapoor, 268 F.3d 1208, 1216 (10th Cir. 2001) (holding that "hiring a private doctor . . . to perform supervisory duties" did not relieve county-owned

18

hospital from Fourteenth Amendment duty to provide employees equal protection).

Several district courts, including those in this circuit, have similarly concluded that, when contracting out medical care of inmates to third parties, local governments have a continuing obligation to ensure the provision of adequate inmate medical care under the Eighth Amendment. See Scott v. Clarke, 64 F. Supp. 3d 813, 819 (W.D. Va. 2014) ("[T]he lower courts of the United States have repeatedly concluded that State and local governments may not insulate themselves from Eighth Amendment claims premised upon allegations of deficient medical care by delegating responsibility for the provision of medical care to third parties."); McGill v. Corr. Healthcare Cos., Inc., No. 13-CV-01080-RBJ-BNB, 2014 WL 5423271, at *6-7 (D. Colo. Oct. 24, 2014) (concluding that a county could be liable "through the non-delegable duty doctrine" for inadequate training provided by a private medical care entity contracting with the county); Wilson v. Douglas Cnty., No. 8:03CV70, 2005 WL 3019486, at *1 n.1 (D. Neb. Nov. 10, 2005) (noting that a county may be liable for unconstitutional medical care "notwithstanding that the County contracted with Wexford, a private company, to provide medical services to inmates"); Irby v. Erickson, No. 03-C-1801, 2004 WL 783103, at *2 (N.D. Ill. Jan. 16, 2004) ("Contracting out prison medical care, if that is what occurred here, does not relieve the county of its constitutional

19

duty to provide adequate medical treatment to those in its custody."). But see Millmine v. Cnty. of Lexington, No. C/A 3:09-1644-CMC, 2011 WL 182875, at *5 (D.S.C. Jan. 20, 2011) (concluding that a county is not liable for an official policy or custom of third party with whom it contracted inmate medical care because such liability is "a respondeat superior theory not viable under § 1983").

Here, the County allegedly contracted out to Corizon its obligation to provide inmates with medical care. (Doc. 20 ¶¶ 29, 32.) The amended complaint further alleges that Corizon was delegated some final policymaking authority and that the County failed to review Corizon's policies. (Id. ¶¶ 44, 140(b).) Therefore, when the County purportedly contracted out the performance of inmate medical care, at least some of Corizon's policies became "that of the County," and thus potential § 1983 liability is not based on respondeat superior. King, 680 F.3d at 1020; see also Ancata, 769 F.2d at 706. Therefore, the County may still be liable for alleged constitutionally inadequate medical care despite having contracted it out to Corizon.[4]

---

[4] As with Corizon's motion to dismiss, Guilford Defendants make no argument that the amended complaint fails to state plausible allegations of Corizon's official policy or custom causing any alleged constitutional deprivation. Also like Corizon's motion, Guilford Defendants argue that Plaintiffs made insufficient allegations of deliberate indifference as to the County. However, because Corizon's policies become the County's, see King, 680 F.3d at 1020, and this court has already found sufficient allegations of Corizon's deliberate indifference, supra, the Guilford Defendants' argument similarly fails.

Guilford Defendants' motion to dismiss Plaintiffs' § 1983 claim against the County will consequently be denied.

### 3. Section 1983 Claim Against Sheriff Barnes in His Official Capacity

Guilford Defendants next contend that the § 1983 claim against Sheriff Barnes in his official capacity fails to state a claim for relief. Plaintiffs respond that their amended complaint pleads sufficient facts to avoid Rule 12(b)(6) dismissal.

Plaintiffs have sued Sheriff Barnes only in his official capacity. (Doc. 20 at 30.) "[A] suit against a sheriff in his official capacity constitutes a suit against a local governmental entity, i.e., a sheriff's office." Parker v. Burris, No. 1:13CV488, 2015 WL 1474909, at *6 (M.D.N.C. Mar. 31, 2015), report and recommendation adopted, No. 1:13CV488, 2015 WL 2169148 (M.D.N.C. May 8, 2015); see also Gantt v. Whitaker, 203 F. Supp. 2d 503, 508 (M.D.N.C. 2002). Here, both parties devote almost their entire briefing to argue about Sheriff Barnes' personal involvement in, and his supervisory liability arising from, Plaintiffs' allegations. (See Doc. 29 at 14–16; Doc. 33 at 13–15; Doc. 34 at 5–7.) However, "when supervisory liability is imposed, it is imposed against the supervisory official *in his individual capacity* for his own culpable action or inaction in the training, supervision, or control of his subordinates." Clay v. Conlee, 815 F.2d 1164, 1170 (8th Cir. 1987) (emphasis added); see

21

also Shelley v. Cnty. of Kershaw, No. CA 3:11-3477-CMC, 2013 WL 3816708, at *4 n.6 (D.S.C. July 22, 2013) (holding that, because the sheriff was not sued in his individual capacity, "no claim under § 1983 for supervisory liability has been properly asserted against [the sheriff] in this court"). Insofar as Sheriff Barnes is sued only in his official capacity, supervisory liability may not be imposed upon him.

In order to state a claim against Sheriff Barnes in his official capacity, Plaintiffs "must allege that the alleged constitutional violations resulted from an official policy or custom of the Sheriff's office." Evans v. Guilford Cnty. Det. Ctr., No. 1:13CV499, 2014 WL 4641150, at *3 (M.D.N.C. Sept. 16, 2014); Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003) ("[N]ot every deprivation of a constitutional right will lead to municipal liability. Only in cases where the municipality causes the deprivation 'through an official policy or custom' will liability attach." (quoting Carter, 164 F.3d at 218)).

Guilford Defendants' only argument related to Plaintiffs' official capacity claim against Sheriff Barnes is that "it must be dismissed as Monell precludes liability predicated on vicarious liability or respondeat superior." (Doc. 29 at 14.) This argument overlooks that § 1983 imposes liability based on an official capacity claim, such as here, if an "action pursuant to official municipal policy of some nature caused a constitutional tort."

22

<u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 691–95 (1978). Guilford Defendants make no argument that Plaintiffs' amended complaint fails to allege facts of an official policy causing the claimed Eighth Amendment violation. In the absence of their having raised this argument, the court will not do so.

Guilford Defendants' motion to dismiss Plaintiffs' § 1983 claim against Sheriff Barnes, in his official capacity, will therefore be denied.

### 4. State Law Claims Against Guilford Defendants

Finally, Guilford Defendants argue that Plaintiffs' State law claims should be dismissed as barred by State sovereign or governmental immunity. Under State sovereign immunity, sheriffs are immune from suit absent a waiver of immunity. <u>See</u> <u>Phillips v. Gray</u>, 592 S.E.2d 229, 232 (N.C. Ct. App. 2004) ("The doctrine of sovereign immunity bars actions against public officials sued in their official capacities. Sheriffs and deputy sheriffs are considered public officials for purposes of sovereign immunity." (citation omitted)). "Substantially the same immunity is given to a county and its agencies, absent a waiver, under the rubric of 'governmental immunity.'" <u>Russ v. Causey</u>, 732 F. Supp. 2d 589, 610 (E.D.N.C. 2010) (quoting <u>Craig ex rel. Craig v. New Hanover Cnty. Bd. of Educ.</u>, 678 S.E.2d 351, 353 n.3 (N.C. 2009)), <u>aff'd in part</u>, 468 F. App'x 267 (4th Cir. 2012). Plaintiffs contend that immunity has been waived as to both Sheriff Barnes and the County.

Unlike the analysis above, "[a] motion to dismiss based on sovereign immunity is a jurisdictional issue." M Series Rebuild, LLC v. Town of Mount Pleasant, Inc., 730 S.E.2d 254, 257 (N.C. Ct. App. 2012). Guilford Defendants' motion raises an immunity defense based on a lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), citing Green v. Kearney, 690 S.E.2d 755 (N.C. Ct. App. 2010). In Green, the North Carolina Court of Appeals concluded, "[T]he general rule is that sovereign immunity presents a question of personal jurisdiction, not subject matter jurisdiction." Id. at 760; see also Meherrin Indian Tribe v. Lewis, 677 S.E.2d 203, 207 (N.C. Ct. App. 2009) ("[A]n appeal of a motion to dismiss based on sovereign immunity presents a question of personal jurisdiction rather than subject matter jurisdiction." (quoting Data Gen. Corp. v. Cty. of Durham, 545 S.E.2d 243, 245–46 (N.C. Ct. App. 2001)) (internal quotation marks omitted)). Thus, the court will consider Guilford Defendants' motion to dismiss under Rule 12(b)(2).[5]

---

[5] The North Carolina Supreme Court has yet to decide whether dismissal based on State sovereign or governmental immunity is a matter of personal or subject-matter jurisdiction. North Carolina courts continue to hold that "whether sovereign immunity is grounded in a lack of subject matter jurisdiction or personal jurisdiction is unsettled in North Carolina." M Series Rebuild, 730 S.E.2d at 257; see also Atl. Coast Conference v. Univ. of Md., 751 S.E.2d 612, 617 (N.C. Ct. App. 2013). Whether to assess the State sovereign immunity defense under Rule 12(b)(1) or 12(b)(2), however, appears to be immaterial here. See AGI Assocs., LLC v. Profile Aviation Ctr., Inc., No. 5:13CV61-RLV, 2013 WL 4482933, at *3 (W.D.N.C. Aug. 21, 2013) (noting that the court could conduct jurisdictional analysis of State sovereign immunity under Rule 12(b)(1)

24

Plaintiffs bear the burden of establishing personal jurisdiction by a preponderance of the evidence. See Universal Leather, LLC v. Koro AR, S.A., 773 F.3d 553, 558 (4th Cir. 2014); Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 396 (4th Cir. 2003); Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989). "When, however, as here, a district court decides a pretrial personal jurisdiction motion without conducting an evidentiary hearing, the plaintiff need only make a prima facie showing of personal jurisdiction." Carefirst, 334 F.3d at 396. The court may consider supporting affidavits when determining whether a plaintiff has made a prima facie showing of personal jurisdiction. See Universal Leather, 773 F.3d at 558. "In deciding whether the plaintiff has proved a prima facie case of personal jurisdiction, the district court must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor." Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 60 (4th Cir. 1993); see also Carefirst, 334 F.3d at 396. If the existence of jurisdiction turns on disputed factual questions, the court may resolve the challenge on the basis of an

---

or Rule 12(b)(2)), aff'd sub nom. AGI Assocs., LLC v. City of Hickory, N.C., 773 F.3d 576 (4th Cir. 2014); Collum v. Charlotte-Mecklenburg Bd. of Educ., No. 3:07CV534-RJC-DSC, 2010 WL 702462, at *6 (W.D.N.C. Feb. 23, 2010) (assessing State sovereign and governmental immunity under both Rule 12(b)(1) and Rule 12(b)(2)); Pettiford, 556 F. Supp. 2d at 524 n.8 ("[T]he distinction appears to have no impact on the method of review."). Notably, Plaintiffs do not object to assessing Guilford Defendants' motion under Rule 12(b)(2).

evidentiary hearing or, when a prima facie demonstration of personal jurisdiction has been made, it can proceed "as if it has personal jurisdiction over th[e] matter, although factual determinations to the contrary may be made at trial." Pinpoint IT Servs., L.L.C. v. Atlas IT Exp. Corp., 812 F. Supp. 2d 710, 717 (E.D. Va. 2011) (citing 2 James Wm. Moore et al., Moore's Federal Practice ¶ 12.31 (3d ed. 2011)).  Nevertheless, either at trial or at a pretrial evidentiary hearing, the plaintiff must eventually prove the existence of personal jurisdiction by a preponderance of the evidence.  New Wellington Fin. Corp. v. Flagship Resort Dev. Corp., 416 F.3d 290, 294 n.5 (4th Cir. 2005).

As to Sheriff Barnes, North Carolina law permits suits against "a sheriff and the surety on his official bond for acts of negligence in the performance of official duties."[6]  Myers v. Bryant, 655 S.E.2d 882, 885 (N.C. Ct. App. 2008) (citing N.C. Gen.

---

[6] North Carolina law also waives immunity of a sheriff by the purchase of liability insurance under N.C. Gen. Stat. § 153A-435.  See Russ, 732 F. Supp. 2d at 610; Myers, 655 S.E.2d at 885 (holding that county's purchase of liability insurance can waive sheriff's immunity beyond $25,000 bond).  Plaintiffs, however, make no allegation or contention that the County's participation in the LGELF further waives Sheriff Barnes' immunity.  See Russ, 732 F. Supp. 2d at 611 ("Any effective waiver of immunity through the insurance policy would have to be in addition to and separate from the waiver of the bond.").  Guilford Defendants have also submitted the affidavit of Randall R. Zimmerman, President of the LGELF, who states that Guilford County's "Fund B" is "separate and distinct" from Sheriff Barnes' bond.  (Doc. 30 ¶ 10.) Zimmerman further states, "In his capacity as Sheriff of Guilford County, Sheriff B.J. Barnes is not a principal under any other surety bonds nor is he a member of any Local Government Risk Pool nor is he insured under any General Liability Insurance Policy or Law Enforcement Liability Insurance Policy."  (Id. ¶ 11.)

Stat. § 58-76-5). North Carolina law requires that all sheriffs purchase a bond not exceeding $25,000. N.C. Gen. Stat. § 162-8. Under North Carolina law, a sheriff waives State sovereign immunity by purchasing that bond. N.C. Gen. Stat. § 58-76-5.

Here, Sheriff Barnes allegedly purchased a $25,000 bond, as required by N.C. Gen. Stat. § 162-8. (Doc. 20 ¶¶ 33; Doc. 30 at 7.) Plaintiffs sued both Sheriff Barnes and the surety on his official bond, LGELF, for negligence and loss of consortium stemming from that negligence. (Doc. 20 ¶¶ 33, 141, 153-58; Doc. 30 at 7.) Under North Carolina law, therefore, the amended complaint states sufficient allegations that State sovereign immunity is waived as to Sheriff Barnes to this extent. See Myers, 655 S.E.2d at 885; Smith v. Phillips, 451 S.E.2d 309, 313 (N.C. Ct. App. 1994); see also Russ, 732 F. Supp. 2d at 610.

Recognizing this potential conclusion, Guilford Defendants ask the court to limit Plaintiffs' claims to the amount of Sheriff Barnes' bond — $25,000. (Doc. 29 at 20; Doc. 30.) They argue that such a limitation is consistent with N.C. Gen. Stat. § 153A-435(a). See N.C. Gen. Stat. § 58-76-5. Plaintiffs offer no response to Guilford Defendants' proposed limitation.

North Carolina courts have held that purchase of a bond by a sheriff, as required under N.C. Gen. Stat. § 162-8, waives State sovereign immunity but "only to the extent of the amount of the bond." White v. Cochran, 748 S.E.2d 334, 339 (N.C. Ct. App. 2013);

see also Hill v. Medford, 588 S.E.2d 467 (N.C. 2003) (per curiam) (adopting dissent in 582 S.E.2d 325 (N.C. Ct. App. 2003), which stated, "As a public official, if sued in his or her official capacity, a sheriff is protected against tort actions by governmental immunity unless the sheriff purchases a bond pursuant to G.S. § 58-76-5, and then, can only be liable on tort claims to the extent of the amount of that bond"); Summey v. Barker, 544 S.E.2d 262, 264 (N.C. Ct. App. 2001) (holding that, "to the extent of the bond required" by a different North Carolina law, a public officer's immunity did not bar plaintiff's claim). Federal courts interpreting North Carolina law have reached the same conclusion. See Oliver v. Harper, No. 5:09-CT-3027-H, 2011 WL 1104134, at *10 (E.D.N.C. Mar. 22, 2011) ("[T]he defendants' purchase of a $25,000.00 bond does waive immunity for damages but only up to the amount of the bond."); Russ, 732 F. Supp. 2d at 610.

Because Sheriff Barnes allegedly purchased a $25,000 bond as required by N.C. Gen. Stat. § 162-8 (Doc. 20 ¶ 33; Doc. 30) and Plaintiffs have not presented (nor has this court found) any reason to reach a contrary conclusion, the court will limit Plaintiffs' State law claims against the Sheriff (Counts III and V) to the $25,000 amount of the bond.

As for the County, Plaintiffs first argue that N.C. Gen. Stat. § 153A-225 waives the County's governmental immunity. In support of this argument, Plaintiffs cite Beckles-Palomares v. Logan, 688

28

S.E.2d 758 (N.C. Ct. App. 2010), for the proposition that "if a governmental unit is under a statutory obligation to perform an act, then it may not claim governmental immunity when it fails in that duty." (Doc. 33 at 18.) This is a misreading of that decision. In Beckles-Palomares, the North Carolina Court of Appeals applied established law that N.C. Gen. Stat. § 160A-296 waives the governmental immunity doctrine. 688 S.E.2d at 242–43. In doing so, the court applied "the safe streets exception," which states that maintenance of municipality streets and sidewalks is a proprietary, not governmental, function unprotected by governmental immunity. See Sisk v. City of Greensboro, 645 S.E.2d 176, 179 (N.C. Ct. App. 2007). Plaintiffs fail to explain how that case demonstrates that a different statute — N.C. Gen. Stat. § 153A-225 — establishes a waiver of governmental immunity. See Meyer v. Walls, 489 S.E.2d 880, 884 (N.C. 1997) (stating, in reference to waiver of governmental immunity, "[w]aiver of sovereign immunity may not be lightly inferred" (quoting Guthrie v. N.C. State Ports Auth., 299 S.E.2d 618, 627 (N.C. 1983))). Plaintiffs' waiver argument as to § 153A-225 is thus unpersuasive.

Plaintiffs also argue that the County waived its immunity by purchasing liability insurance pursuant to N.C. Gen. Stat. § 153A-435(a). Under § 153A-435(a), a county may "purchase liability insurance, which includes participating in a local government risk pool, for negligence caused by an act or omission of the county or

any of its officers, agents, or employees when performing government functions." <u>Myers</u>, 655 S.E.2d at 885. Purchase of insurance pursuant to § 153A-435(a) "waives the county's governmental immunity, to the extent of insurance coverage." § 153A-435(a). In their amended complaint, Plaintiffs allege that the County "may be insureds under a liability insurance policy or participation [sic] in a Risk Pool." (Doc. 20 ¶ 34.)

Guilford Defendants acknowledge that the County has participated in the LGELF since 2001, but they claim that this participation does not constitute a waiver of immunity under § 153A-435(a). (Doc. 29 at 19; Doc. 30 ¶ 5.) In support of their defense, Guilford Defendants filed the affidavit of Randall R. Zimmerman, President of the LGELF. (Doc. 30.) According to Zimmerman, the County is self-insured up to $100,000. (<u>Id.</u> ¶ 4.) The LGELF pays claims against the County between $100,000 and $5,000,000, but the County is obligated to repay the LGELF in the entirety. (<u>Id.</u>)

Based on the County's evidence, which is uncontested, the LGELF does not waive the County's immunity. The LGELF fails to meet the statutory requirements of a local government risk pool because (1) two LGELF members, the Guilford County Board of Education and Guilford Technical Community College, are not local governments, <u>see</u> N.C. Gen. Stat. §§ 58-23-1, 58-23-5(a); (Doc. 30 ¶ 7(a)); (2) no notice was given to the Commissioner of Insurance

30

that the participating entities "intend[ed] to organize and operate [a] risk pool[]" under North Carolina law, as required by N.C. Gen. Stat. § 58-23-5(e), (Doc. 30 ¶ 7(b)); and (3) the LGELF does not contain a provision for a system or program of loss control, see N.C. Gen. Stat. § 58-23-15(1); (Doc. 30 ¶ 7(c)). See Pettiford, 556 F. Supp. 2d at 525 (finding similar failures to meet the statutory requirements of a local government risk pool); Lyles v. City of Charlotte, 477 S.E.2d 150, 153 (N.C. 1996) (same); Dobrowolska ex rel. Dobrowolska v. Wall, 530 S.E.2d 590, 595-96 (N.C. Ct. App. 2000) (same). The LGELF also does not constitute a local government risk pool because the County must repay the entire amount for claims between $100,000 and $5 million.[7] N.C. Gen. Stat. § 153A-435(a); see also Pettiford, 556 F. Supp. 2d at 525 (applying similar statutory provision applicable to North Carolina cities); White, 748 S.E.2d at 340 (holding that immunity is waived under § 153A-435(a) only to the extent that a county is indemnified). Finally, the County's Board of Commissioners did not adopt a resolution deeming "the creation of [the LGELF] to be the same as the purchase of insurance," which would have also waived its governmental immunity. N.C. Gen. Stat. § 153A-435(a);

---

[7] The LGELF fails to meet several other statutory requirements. In particular, it (1) does not make any accounting reports available to the Commissioner of Insurance, N.C. Gen. Stat. § 58-23-26, (Doc. 30 ¶ 7(d)); and (2) has no authority or mechanism to assess members of the pool to satisfy any financial deficiencies, N.C. Gen. Stat. § 58-23-30(b); (Doc. 30 ¶ 7(e)).

(Doc. 30 ¶ 8).

Plaintiffs argue finally that they should be able to conduct "at least minimal discovery" to investigate the County's involvement in the risk pool. (Doc. 33 at 20.) But to do so, in light of the County's affidavit, would deprive the County of the very immunity to which it is entitled. In the absence of some reason to question the County's affidavit, Plaintiffs' request for jurisdictional discovery is denied. See Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 402 (4th Cir. 2003) ("When a plaintiff offers only speculation or conclusory assertions . . ., a court is within its discretion in denying jurisdictional discovery."); Base Metal Trading, Ltd. v. OJSC "Novokuznetsky Aluminum Factory", 283 F.3d 208, 216 n.3 (4th Cir. 2002) (upholding district court's denial of jurisdictional discovery where "the plaintiff simply wants to conduct a fishing expedition in the hopes of discovering some basis of jurisdiction").

Guilford Defendants' motion to dismiss the amended complaint's State law claims against the County (Counts III and V) will therefore be granted.

## III. CONCLUSION

For the reasons stated, therefore,

IT IS ORDERED that Corizon's motion to dismiss (Doc. 25) is GRANTED as to Plaintiffs' negligence per se claim (Count IV); and

32

DENIED as to Plaintiffs' § 1983 claim (Count II) and request for punitive damages (Count VI).

IT IS FURTHER ORDERED that Guilford Defendants' motion to dismiss (Doc. 28) is GRANTED as to Plaintiffs' Fourteenth Amendment claim under § 1983 against Guilford County and Sheriff Barnes (Count I), Plaintiffs' State law claims against Guilford County (Counts III and V); and Plaintiffs' State law claims against Sheriff Barnes (Counts III and V) to the extent those claims will be limited to recovery up to and including $25,000; and DENIED as to Plaintiffs' Eighth Amendment claims under § 1983 against Guilford County and Sheriff Barnes in his official capacity (Count I).

/s/    Thomas D. Schroeder
United States District Judge

August 4, 2015