```
              UNITED STATES DISTRICT COURT
          FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
```

| | |
|---|---|
| GLENDA S. SIMMONS and<br>CALVIN C. SIMMONS as<br>Co-Guardians and<br>Co-Conservators of their son,<br>BRYAN O'NEIL SIMMONS, and<br>TIFFANY SIMMONS,<br><br>               Plaintiffs,<br><br>v.<br><br>CORIZON HEALTH, INC.,<br>CORIZON,LLC, B.J. BARNES, in<br>his official capacity as<br>Sheriff of Guilford County,<br>North Carolina, GUILFORD<br>COUNTY, a governmental entity<br>of the State of North<br>Carolina, and THE LOCAL<br>GOVERNMENT EXCESS LIABILITY<br>FUND, INC.,<br><br>               Defendants. | 1:14-CV-730 |

**ORDER APPROVING SETTLEMENT FOR BRYAN O'NEIL SIMMONS, an Incompetent Adult**

This matter came to be heard, and was heard, before the undersigned on May 18, 2017, upon the petition of the parties to approve a settlement of the litigation, which includes settling claims by co-guardians and co-conservators for Plaintiff Bryan O'Neil Simmons ("Bryan Simmons"), an incompetent adult. The settlement terms were initially set forth in a Confidential Settlement Agreement and Release dated April 19, 2017, signed by all Plaintiffs and Defendants Corizon Health, Inc. and Corizon,

LLC (collectively "Corizon Defendants") and submitted to the court under seal. As a consequence of the May 18, 2017 hearing, the parties executed an Amended Confidential Settlement Agreement and Release ("Settlement Agreement") dated May 23, 2017, and signed by those parties, which has also been submitted to the court under seal. The Settlement Agreement supersedes and replaces the prior version and now constitutes the final settlement for this court's approval.

Local Rule 17.1(c) requires that no civil action in which an incompetent is a party may be settled or otherwise terminated without the approval of the court. Pursuant to Local Rule 17.1(e), such a settlement must be consented to by counsel for the parties to the action and by the guardian *ad litem*. <u>Aldridge v. Oxford Apparel, Inc.</u>, 348 F. Supp. 2d 574, 575 (M.D.N.C. 2004). Additionally, the parties must have agreed to the settlement terms, including the amount, and after conducting a hearing on the matter, the court must find that the proposed settlement is fair, reasonable, and in the best interest of the incompetent. L.R. 17.1(e).

The court has carefully reviewed the Settlement Agreement as well as confidential materials provided by Plaintiffs' counsel, including medical records of Bryan Simmons, videos of him, and other materials pertaining to the terms of the Settlement

Agreement. The court is also familiar with the record in the case from prior proceedings.

Following an extensive hearing on May 18, 2017, and the court's review of the complete record, the court concludes that given the complexity of this matter, the uncertainty of trial, and the well-being of Bryan Simmons, the proposed Settlement Agreement is fair, reasonable, and in the best interests of Bryan Simmons.

In support thereof, the court makes the following Findings and Conclusions:

1. All parties are properly before the court, having received due notice and opportunity to be heard. Any person not so appearing has been deemed to have waived any interest they may have been able to assert in this action as well as any objection or complaint as to the outcome of the settlement approval hearing.

The hearing was conducted in accordance with the attendance requirements set forth in Local Rule 17.1(c)(4). In addition to the attorneys for all parties, Bryan Simmons' parents and co-guardians/co-conservators, Glenda S. Simmons and Calvin C. Simmons, were present at the hearing. Tiffany Simmons, Bryan Simmons' wife, was also present. Bryan Simmons was not present at the hearing, excused by the court on account of his serious medical condition and his difficulty traveling. The court also notes that his interests were fully represented by his co-guardians/co-conservators and counsel personally appearing before this court.

3

The Corizon Defendants were represented by counsel, and counsel appearing for Defendants B.J. Barnes, in his official capacity as Sheriff of Guilford County, North Carolina, Guilford County, a governmental entity of the State of North Carolina, and The Local Government Excess Liability Fund, Inc. (the "Guilford County Parties") was present.

2. The court has jurisdiction over the parties and subject matter of this case on the grounds of federal question jurisdiction, based on Bryan Simmons' claim under 42 U.S.C. § 1983.

3. The facts giving rise to the cause of action and the contentions of the parties with respect to liability and damage are more fully set forth in the court's opinion addressing the Corizon Defendants' motion to dismiss. (Doc. 35.) For the purposes of this order, the court notes the following:

    a. Bryan Simmons is an incompetent adult residing in an assisted living facility in Fincastle, Virginia, but is formerly a resident of Guilford County, North Carolina. He is the only son of Glenda and Calvin Simmons. He was approximately 36 years old when the events giving rise to this cause of action occurred.

    b. Glenda S. Simmons and Calvin C. Simmons are husband and wife and are citizens and residents of Guilford County, North Carolina, and the parents of Bryan Simmons, an incompetent adult.

c. Tiffany Simmons is a citizen and resident of Guilford County, North Carolina. She married Bryan Simmons in March 2012.

d. Corizon Defendants are companies domiciled outside North Carolina.

e. Corizon Health, Inc. is a health care company that provides health care services to jails and prisons across the United States, and specifically at all times relevant to this action was providing health care services to the Guilford County Jail pursuant to a written contract with Guilford County, North Carolina.

f. This action was initiated on September 3, 2014.

g. Bryan Simmons was incarcerated in the Guilford County Detention Center beginning September 4, 2012, for a period of 90 days.

h. On December 2, 2012, the day prior to his release from the Detention Center, Bryan Simmons suffered an anoxic brain injury that left him in a persistent vegetative state without any chance of recovery. He is currently cared for by the Brian Center in Fincastle, Virginia.

i. Bryan Simmons is in need of around-the-clock care, and his medical bills are currently being paid by Medicaid of Virginia. He is unable to voluntarily move, he cannot

5

feed himself, he is unable to speak, and his upper and lower extremities have developed contractures with time.

    j. Glenda S. and Calvin C. Simmons were appointed as co-guardians and co-conservators of their son by order of the Virginia Circuit Court of Botetourt County on October 2, 2013.

    k. Plaintiffs allege that Bryan Simmons' anoxic brain injury was the result of a lack of timely medical care for a stomach ulcer and resulted from a reckless indifference to his rights and safety.

    l. Corizon Defendants deny Plaintiffs' allegations and specifically deny that Bryan Simmons' injury was proximately caused by any act or omission on their part.

4. The court finds that Glenda S. Simmons and Calvin C. Simmons have proceeded diligently and in good faith to protect the estate and the best interests of their ward, Bryan Simmons. They have competently prosecuted the claims alleged in this lawsuit with resolve and with the assistance of qualified and able counsel. The dealings between the parties to this action have been arms-length and adversarial at all times, and the Settlement Agreement presented to this court for approval is the product of actual, full, and fair negotiations arising out of a mediation process which has been generally recognized, sanctioned, and encouraged both by this court and the State courts of North Carolina.

6

5. The parties acknowledged in open court that they have had ample time to consider the Settlement Agreement and its ramifications.

6. The court has considered the roles of counsel for the co-guardians/co-conservators and finds that such counsel have ably and fully represented the co-guardians/co-conservators and the interests of their ward with all due diligence and without disqualifying or disabling conflicts of interest.

7. The court has reviewed the Settlement Agreement as well as the complete record. The court finds that the Settlement Agreement represents a settlement that is fair, reasonable, and in the best interests of Bryan Simmons, with the concurrence of his attorneys and co-guardians/co-conservators. The court further finds that the Settlement Agreement and thus the settlement is the product of a fair, reasonable, and appropriate arms-length negotiation between actual adversaries. The court further finds that all parties had adequate opportunity to investigate and evaluate the claims at issue as well as the terms of the Settlement Agreement, and that all parties have done so with reasonable diligence and competence.

8. The parties have negotiated a resolution of the matter as set forth in the Settlement Agreement, which was provided to the court, with the understanding and agreement that in exchange for the terms of the Settlement Agreement, Defendants Guilford County

7

Parties will dismiss with prejudice the claims filed by them in this action and fully release all Plaintiffs and Corizon Defendants of all claims or potential claims relating to or arising from the matters alleged in the pleadings filed in this case or the injuries suffered by Bryan Simmons relating to those matters.

9. The parties' Settlement Agreement is contingent upon its agreement that its terms be kept confidential, and the court finds that protecting the confidentiality of those terms is fair and reasonable and in the best interest of the parties.

10. The court finds that the settlement sum adequately provides for Bryan Simmons, given all relevant factors in the case. According to the Settlement Agreement, the sum will be held in trust pending the resolution of pending medical liens with the Office of the Virginia Attorney General and the Office of the North Carolina Attorney General.

11. Prior to the initiation of the lawsuit, the Plaintiffs in this matter executed a written fee contract pursuant to Rule 1.5 of the North Carolina Rules of Professional Conduct that provided for attorneys' fees equal to the one-third of the gross recovery of this matter, plus the recovery of any costs advanced. This arrangement is reasonable and is standard for contingency fee agreements in North Carolina.

12. The Fourth Circuit has articulated 12 factors to be considered in approving a contingency fee:

(1) the time and labor required in the case, (2) the novelty and difficulty of the questions presented, (3) the skill required to perform the necessary legal services, (4) the preclusion of other employment by the lawyer due to acceptance of the case, (5) the customary fee for similar work, (6) the contingency of a fee, (7) the time pressures imposed in the case, (8) the award involved and the results obtained, (9) the experience, reputation, and ability of the lawyer, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship between the lawyer and the client, and (12) the fee awards made in similar cases.

In re Abrams & Abrams, P.A., 605 F.3d 238, 244 (4th Cir. 2010). "[T]he most critical factor in determining the reasonableness of a fee award is the degree of success obtained." Doe v. Chao, 435 F.3d 492, 506 (4th Cir. 2006). A review of the applicable factors favors approval of the contingency agreement.

    a. Because the case involved several disputed facts concerning the cause and nature of Bryan Simmons' injuries, as well complex legal issues involving Bryan Simmons' constitutional rights, the court finds that the case required the attorneys to invest significant time and labor. While the attorneys did not bill their time during their representation, they did note at the May 18, 2017 settlement hearing that their work during the first year of representation alone equaled approximately $300,000 in fees at their normal, customary rate.

9

b. While claims alleging deliberate indifference in violation of a prisoner's constitutional rights are not novel, they do often present difficult questions, especially as pertaining to a defendant's liability under Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978).

c. For similar reasons as discussed above, the difficulty of the questions presented also demanded substantial skill in advancing Bryan Simmons' claims.

d. Plaintiffs' counsel noted at the May 18, 2017 settlement hearing that the materials in this case consumed a complete room of their offices and significant time of their attorneys.

e. The use of a contingency contract is reasonable and customary in these types of cases and is routinely approved by the courts. This is especially so considering the realities of Bryan Simmons' financial situation when he sustained his injuries. As the Fourth Circuit has explained, "[t]he contingency agreement was, as the saying goes, the key to the courthouse door that allowed [the co-guardians] to retain the attorneys who eventually provided for [their] son's ongoing needs." Abrams, 605 F.3d at 246.

f. Because of the significant investment required by the

case, as well as the various motions litigated by the parties, the time pressures imposed on Plaintiffs' counsel were significant.

g. The result obtained by Plaintiffs' counsel was favorable to Bryan Simmons, especially considering the inherent unpredictability of the outcome had the matter gone to trial.

h. Plaintiffs' counsel are experienced in such cases and enjoy a favorable reputation for their abilities. Counsel for the Corizon Defendants spoke positively of their handling of the case during the settlement hearing.

i. The court notes the significant length and depth of relationship between the attorneys and Bryan Simmons. During the course of representation, three attorneys from the law firm of DeVore, Acton & Stafford, P.A. worked on this case for nearly four years from May 15, 2013 (date of the contingency fee agreement) until the present. The matter was resolved approximately 60 days prior to the start of trial set for April 3, 2017. During the course of this representation, the attorneys' services included the following:

- Counsel and advice to the Plaintiffs.

11

- Securing and advancing costs to experts in the areas of medicine (physicians and nurses), health care standards in jails, life care planners, financial advisors, etc.

- Researching and preparing pleadings and discovery including, without limitation: complaint, amended complaint, summonses, briefs in response to motions to dismiss from Defendants, Rule 26 disclosures, interrogatories and requests for documents to Defendants for both co-guardians and Tiffany Simmons, responses to discovery requests from all Defendants, drafting request for admissions, initial and amended discovery motions and orders, drafting protective order, motions to seal parts of the discovery, deposition notices, subpoenas, response and reply briefs to various motions including motions for and opposing summary judgment as to Defendants, motion to compel, and many other filings.

- Reviewing substantial medical records and meeting with treating physicians, nurses and administrators.

- Interviewing and researching experts in the areas of medicine, institutional health care, life care planning, economics, and life expectancy.

- Spending substantial time editing and transcribing hours of video and audio recordings from the jail.

- Making multiple trips to see Bryan Simmons in Fincastle, Virginia.

- Making repeated trips to Greensboro to meet with clients regarding the pending litigation.

- Conducting 22 depositions in locations including Greensboro, Charlotte, Denver, New York City, Raleigh, San Francisco, Los Angeles,

12

> Philadelphia, Roanoke, Virginia and Fincastle, Virginia, comprising over 2,300 pages of deposition transcripts.

- Since 2015, working with consultants to determine the best use of any funds recovered on behalf of Bryan Simmons. In the past several months, meeting several times with these representatives in Charlotte and Greensboro.

13. The court has reviewed documentation of the education, experience, and reputation of Plaintiffs' counsel and finds that based upon all of the factors enumerated above and based on the review of Plaintiffs' documentation, the consent to the attorneys' fee by the co-guardians and Plaintiff Tiffany Simmons, the attorneys' fee requested is reasonable and customary.

14. Bryan Simmons' co-guardians and co-conservators, Glenda S. and Calvin C. Simmons, have provided a statement to the court indicating their approval of the settlement, their gratitude for their son's representation, and satisfaction with the proposed attorneys' fee. They also appeared in court and confirmed their desire have the settlement, including the attorneys' fee award, approved.

IT IS THEREFORE ORDERED that the settlement between the parties as set forth in the Settlement Agreement is APPROVED and the funds may be disbursed as set forth in the Settlement Agreement and in a manner not inconsistent with the findings and conclusions herein.

The parties shall file all dismissals as provided for in the Settlement Agreement and as agreed upon during the May 18 hearing.

/s/   Thomas D. Schroeder
United States District Judge

May 26, 2017